HARRIS, Judge.
Daniel Bowen appeals his conviction for felony murder, armed robbery, kidnapping and armed burglary of a conveyance. He contends the trial court erred in not suppressing statements made by him in violation of his fourth and fifth amendment rights.
On July 20, 1987, Bowen, Elizabeth Towne, Bunny Dixon and Anthony Hall devised a plan to steal a car and leave Florida to join a carnival. Towne (Bowen’s girlfriend) and Dixon posed as hitchhikers and flagged down the car of Ngoc Van Dang. When the car stopped, Bowen and Anthony Hall ran up with guns and the four jumped in the car. They took Dang to a deserted area of Orlando and robbed him of $100.00 at gunpoint. They then taped his mouth, hands and feet and put him in the trunk of the car. On the interstate near Daytona, the men stopped the car and together with Dixon, dragged him into the woods. Dixon then proceeded to carve a cross into his chest.[1] The men then shot the victim several times in the head.
The four proceeded on to North Carolina whereupon an argument broke out between Bowen and Hall. The four split up with Hall and Dixon taking the car. Bowen and Towne then called the Weldon (North Carolina) Police Department and reported that they had been kidnapped by their friends and had witnessed a murder in Florida. Chief Gregory Harrington of the Weldon Police Department took their statements and notified the Orlando Police Department. Bowen spoke to the Orlando Police Department and agreed to come back to Florida and give a statement. Chief Harrington then bought them dinner and bus tickets from his own funds. He instructed the bus driver that they were victims of a kidnapping and to see that they got to Orlando safely.
*386 Once in Orlando, Bowen and Towne proceeded to the home of friends. There they were approached by Officer Tony Davidson of the Orlando Police Department and voluntarily agreed to give a statement to the police. They were interviewed in the lieutenant’s office and gave oral tape-recorded statements to the officers. Bowen and Towne then agreed to show the police where the body was located. At the scene they gave written statements to the Orlando police. Because of the location of the body, there was some dispute as to which county had jurisdiction. Volusia and Fla-gler County Sheriffs Departments were called to the scene. Flagler was given charge of the scene and the Orlando police returned to Orlando.
The investigation ended around 1:30 a.m., at which time Officer Williams of Flagler County spoke to Bowen and Towne about where they would spend the night. They indicated they would like to return to Orlando, but no buses were running late at night and they had no money. Williams offered to let them stay at the jail overnight and to arrange transportation to Orlando the following day. They agreed and both were individually housed in adjoining cells of the women’s section of the jail. They were designated as being in “protective custody” in jail records to justify their presence in jail.
The next afternoon, it was determined that Volusia County had jurisdiction over the crime, and Officer Buscher from Volu-sia picked up Bowen and Towne and took them to Volusia County. Buscher testified that both were free to leave at any time and that he arranged to return them to Orlando after taking their statements. Bowen and Towne were read their rights and both signed waivers. They were then interviewed and tape-recorded separately. When their statements conflicted, Buscher, in a raised voice, told Bowen he knew Bowen was lying and that “they were talking about murder one” and Bowen had better tell the truth. He further stated that only Bowen could help himself by telling the truth. Bowen, at his request, was permitted to spend approximately 25 minutes with Towne. He then issued a second tape-recorded statement/confession. At no time prior to his confession was Bowen handcuffed, shackled or placed in a patrol car with cages or automatic locks.
The issue before us is whether Bowen’s fourth or fifth amendment rights were violated.
FOURTH AMENDMENT
Bowen contends that he was illegally held in custody when he made statements to Volusia County Sheriff’s Office and that under Taylor v. Alabama, 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982) these statements should be suppressed.
Taylor holds that a confession obtained through custodial interrogation after an illegal arrest should be excluded unless intervening events break the causal connection between the arrest and the confession so that the confession is sufficiently an act of free will to purge the primary taint.
Bowen urges that by handing him from the North Carolina Police to the Orlando Police Department to the Flagler County Sheriff’s Department to the Volusia County Sheriff’s Department and, then by transferring him from the Flagler County Jail to the Volusia County Criminal Investigation Department, he was subjected to an improper “relay.” This, he claims, constituted an illegal arrest and his confession was the fruit of this illegal arrest.
The evidence does not support this contention. Bowen sought out law enforcement in North Carolina to report his kidnapping and his knowledge of a murder. He voluntarily returned to Florida to make a statement to the Orlando Police Department and assist in the investigation. He agreed to take law enforcement to the murder scene. Flagler County deputies, thinking they had jurisdiction, worked the scene until 1:30 a.m. and, at the request of Bowen (or at least with his consent), permitted him to spend the night at the Flagler County Jail. When it was determined that the crime had occurred in Volusia County, 50 feet from the Flagler County line, Bowen voluntarily accompanied agents from Volu- *387 sia County to the Criminal Investigation Department.
While Bowen made it clear that he wanted to return to Orlando when the investigation was completed, there is ample support in the record that he never withdrew his consent to answer questions and assist in the investigation. After all, almost to the end, he presented himself as a victim of kidnapping and a witness to murder.
Bowen contends that the fact that he was given his Miranda warnings before his first statement in Volusia County shows that he was “in custody.” While the law requires such warnings before custodial interrogation, it does not preclude them in non-eustodial situations. Here the interrogating officer testified that he gives Miranda warnings in all cases—custodial or noncustodial—when there are multiple persons connected with an incident and he does not know what their ultimate involvement might be. He believes it is “better to be safe than sorry.”
The trial court found that Bowen was not “in custody” until he became a suspect and his Miranda warnings were given. This is supported by the record.
FIFTH AMENDMENT
Bowen claims his Fifth Amendment rights were violated by the manner in which he was questioned. He contends that he was intimidated by the interrogator’s size and assertive manner and tone of voice; he was tricked into confessing because of lies and misrepresentations made by the interrogator; and he was induced to confess because he was told that he could help himself by telling the truth.
First, as Miranda points out, any custodial interrogation involves some informal compulsion. To counteract this compulsion, Miranda warnings are required—and, without question, were given in this case.
Second, misrepresentations of fact by an interrogator relevant to the crime under investigation does not require a suppression of the confession. State v. Moore, 530 So.2d 349 (Fla. 2d DCA 1988).
Third, a confession is not rendered inadmissible because the police tell the accused that it would be easier on him if he told the truth. Bush v. State, 461 So.2d 936 (Fla.1984), cert. denied 475 U.S. 1031, 106 S.Ct. 1237, 89 L.Ed.2d 345 (1986).
The trial court was correct in not suppressing the confession.
AFFIRM.
GOSHORN, J., and McNEAL, R.T., Associate Judge, concur.

. The record indicates that Dixon was a satan worshipper and that she carved the cross for "David,” a dead child.