688 So.2d 971 (1997)
Michael Eugene NELSON, Appellant,
v.
STATE of Florida, Appellee.
No. 96-1506.
District Court of Appeal of Florida, Fourth District.
February 26, 1997.
*972 Richard L. Jorandby, Public Defender, and Joseph R. Chloupek, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Aubin Wade Robinson, Assistant Attorney General, West Palm Beach, for appellee.
STONE, Judge.
Appellant's conviction for first degree murder is affirmed. We find no reversible error in the trial court's denial of his motion to suppress Appellant's confession or its failure to make a more specific inquiry and finding as to the race-neutral basis for the state's peremptory challenge of a minority juror.
During the voir dire, in response to defense counsel's inquiry, a prospective juror indicated she could be fair but that "some things I don't like, like murder on T.V., sometimes I can't take it ... I don't particularly like looking at violent shows." The defense objected to the state's exercise of a peremptory challenge as to that juror on the grounds that the challenge was racially motivated.
The prosecutor responded that his objection to the juror was that she "tends to think emotionally and she thinks that emotions would get in her way or at least she had a reasonable doubt about it." The prosecutor also asserted to the trial court that case law required Appellant to show a pattern of conduct establishing racially motivated challenges. In overruling the defense objection, the court noted that there were a number of black female jurors whom the state had not challenged. The court thus concluded that the challenge was not racially motivated.
Appellant's taped confession was admitted at trial. The defense's motion to suppress claimed that Appellant's statements were not voluntarily given because they were the result of threats of the electric chair and promises of leniency. During the interrogation, Appellant gave conflicting versions concerning the circumstances surrounding the victim's death. Appellant claimed that he purchased beer and marijuana and went to the motel room where the victim and the victim's girlfriend lived. Appellant and the girlfriend had also been romantically involved. Appellant initially claimed that this was the last time he saw the victim.
The tape reflects that the interrogators informed Appellant that they had evidence which incriminated him, including blood soaked clothes found in his washing machine, and a statement from the girlfriend and other witnesses. Appellant changed his story to claim that when he left the motel room the victim and the girlfriend were arguing and that Appellant left his gun with the girlfriend.
The interrogators continued to reiterate the evidence they had against Appellant. Appellant denied his involvement and Deputy Maney said "you know they have the death penalty in the State of Florida don't you ... You know that premeditated first degree murder, they'll kill you ... It's time to be honest." The interrogators then told Appellant their theory of the case and Appellant continued to assert his innocence. Deputy Maney then stated "And you think they don't kill people in this state, look at Bundy ... Do you want to die?" They told Appellant that his cooperation "could help" although they "wouldn't guarantee it."
Appellant then offered a third version of the story, that all three traveled to the crime scene, where the girlfriend shot the victim. The interrogators, still skeptical, pointed out inconsistencies in Appellant's story and told Appellant the girlfriend's fingerprints were not on the murder weapon. After a break of more than half an hour, the interrogators *973 repeated Miranda warnings, and obtained a written waiver of Appellant's Miranda rights. They then asked if anyone promised Appellant anything while off the tape. Appellant replied "yes" and stated that Detective Woods said "He'll help me with the Judge... Speak-talk to the Judge."
Appellant then confessed to the murder, stating that the victim was jealous of him, and worried that the girlfriend would "kiss [Appellant] behind his back." Then the girlfriend allegedly told Appellant to "take him out." Appellant took the victim to the crime scene where he shot him twice and threw the body out of the vehicle. When Appellant returned to tell the girlfriend what happened, she did not believe him. Appellant then took her to the scene. After Appellant returned home, he put his bloody clothes and shoes in the washing machine, where police later recovered them. Police also found the victim's blood in Appellant's car.
At trial, Appellant claimed that he shot the victim in self-defense. He told the jury that his confession to interrogators was the product of promises and threats. Appellant alleged that the interrogators told him that he would receive the death penalty unless he confessed his involvement with the murder, and turned the lights in the interrogation room on and off to simulate the use of the electric chair. Appellant also claimed the interrogators said they would talk to the judge in exchange for his cooperation, to try to get leniency, but admitted that the officer who said he would speak to the judge also stated that he could not promise anything. Appellant explained that he did not discuss his self-defense claim because the officers did not raise the subject.
The trial court's finding that the confession was freely and voluntarily given is clothed with a presumption of correctness. Acensio v. State, 497 So.2d 640 (Fla.1986). In determining whether there was police coercion, the court must consider the totality of the circumstances. Hawkins v. Wainwright, 399 So.2d 449 (Fla. 4th DCA 1981); State v. Sawyer, 561 So.2d 278 (Fla. 2d DCA 1990).
Appellant admitted at the hearing on his motion to suppress that no one made any promises to him. A detective stated on tape that, "Well, suppose the State said maybe you cooperated. That could help. I wouldn't guarantee it. I got no idea but your help is far better than us nailing you. Okay?" Although the officers made some general statements that they would communicate Appellant's cooperation to the judge, these comments fall far short of making a bargain with Appellant. See Bruno v. State, 574 So.2d 76, 79-80 (Fla.) (statements suggesting leniency if confession is made are only objectionable if they establish an express quid pro quo bargain for the confession), cert. denied, 502 U.S. 834, 112 S.Ct. 112, 116 L.Ed.2d 81(1991). Appellant admitted that he did not interpret these representations as specifically promising a particular outcome.
A police questioner's indication to a suspect that he or she would benefit from cooperation does not, itself, constitute coercion. Maqueira v. State, 588 So.2d 221 (Fla. 1991), cert. denied, 504 U.S. 918, 112 S.Ct. 1961, 118 L.Ed.2d 563 (1992). A confession is not rendered inadmissible because the police tell the accused that it would be easier on him if he told the truth. Bush v. State, 461 So.2d 936, 939 (Fla.1984), cert. denied, 475 U.S. 1031, 106 S.Ct. 1237, 89 L.Ed.2d 345 (1986); State v. Mallory, 670 So.2d 103 (Fla. 1st DCA 1996); Bova v. State, 392 So.2d 950 (Fla. 4th DCA 1980), modified on other grounds, 410 So.2d 1343 (Fla.1982); Hawkins.
Appellant asserts that the mention of the death penalty was unduly coercive, citing Brewer v. State, 386 So.2d 232 (Fla.1980) and Martinez v. State, 545 So.2d 466 (Fla. 4th DCA 1989). However, the statements made in Brewer and Martinez were significantly more threatening than the statement made in the instant case when weighing the evidence most favorably for the state. Here, the interrogators' objectionable comments occurred within the first thirty minutes of the interview, and Appellant continued to deny any part of the shooting for another two *974 hours.[1] In addition to weighing credibility and the force of the evidence reflected on the tape, the judge found that when Appellant finally did confess to the murder, his voice sounded "calm and deliberate. He also seemed rational and his answers were responsive and consistent with his story." The judge, considering the totality of the circumstances, determined that Appellant's statements were not coerced.
We cannot say that the trial court abused its discretion in coming to this conclusion. The constitution does not bar the use by investigating officers of any statement that could be construed as a threat or promise, but only those which constitute outrageous behavior and which in fact induce a confession. United States v. Guerrero, 847 F.2d 1363, 1366 (9th Cir.1988); United States v. Barnett, 814 F.Supp. 1449, 1456 (D.Alaska 1992). See also United States v. Kolodziej, 706 F.2d 590, 594 (5th Cir.1983) (what renders a confession involuntary is not any threat or promise, but rather the threat or promise of illegitimate action); United States v. Davis, 912 F.Supp. 245 (S.D.Tex.1995) (same). There must be a causal nexus between the improper police conduct and the confession. United States v. Kelley, 953 F.2d 562, 565 (9th Cir.1992). Merely informing a suspect of realistic penalties and encouraging him to tell the truth does not render a confession involuntary. United States v. Mendoza-Cecelia, 963 F.2d 1467 (11th Cir.1992) (confession admissible despite custom official's threat to defendant that "if you don't cooperate with us, ten years can be a long time in jail. Anything can happen and something can happen to your family ..."), cert. denied, 506 U.S. 964, 113 S.Ct. 436, 121 L.Ed.2d 356 (1992); Lindsey v. Smith, 820 F.2d 1137, 1150 (11th Cir.1987) (no coercion despite fact that officers told defendant that he would be charged with capital murder unless he gave a statement). See also Milton v. Cochran, 147 So.2d 137 (Fla.1962) (officer's statements that only by confessing could defendant escape death penalty would not of themselves invalidate confession). Here, there does not appear to be a causal nexus between the comments in question and Appellant's confession when considering the evidence in the light most favorable to the state.
Considering the conflicting testimony and the degree to which the outcome turns on the credibility of the witnesses, we cannot conclude that the trial court abused its discretion in denying the motion to suppress. The state's witnesses all agreed that the alleged incident with respect to flashing the lights, and other allegations going beyond what is reflected on the tape, did not occur. The trial court found their testimony more credible. The trial court's resolution of conflicting evidence will not be disturbed on appeal. State v. Lopez, 590 So.2d 1045 (Fla. 3d DCA 1991).
With respect to the peremptory challenge issue, Appellant asserts that the trial court erred by not inquiring further into, or making a required finding as to, the reasons for the state's challenge. State v. Neil, 457 So.2d 481 (Fla.1984); Melbourne v. State, 679 So.2d 759 (Fla.1996). The record reflects that the court, upon its own initiative, asked the state for its reasons. At this point, the state, as the proponent of the strike, was required to come forward with a race-neutral explanation. If the explanation is not a pretext, the peremptory challenge is to be sustained. Melbourne; Ratliff v. State, 679 So.2d 1183 (Fla.1996); State v. Holiday, 682 So.2d 1092 (Fla.1996). The explanation need not be non-racial and reasonable, only truly non-racial. Melbourne, 679 So.2d at 764 n. 9.
The burden of persuasion never leaves the opponent of a peremptory strike to prove purposeful racial discrimination. Id. at 764. The court noted, in Melbourne, that no rigid set of rules will work in every case, but that reviewing courts should recognize that peremptory strikes are presumed to be exercised in a non-discriminatory manner and that the trial court's decision should be affirmed unless clearly erroneous. Id. at 764-65; Holiday, 682 So.2d at 1094.
After Appellant alleged that the peremptory challenge was racially motivated, the state *975 asserted (without authority) that opposing counsel was required to show a pattern of conduct excusing jurors based on race. The court then asked the state what its second response was, clearly indicating the court's interest in, and attention to, the state's assertion of any race-neutral explanation. The state claimed that its strike was based on the juror's response to the Appellant's questioning in which "she stated that she tends to think emotionally and that she thinks that emotions would get in her way or at least she had a reasonable doubt about it."
The judge deferred his ruling. After both parties had exhausted their allotted challenges, the judge ruled that he would deny the objection because a number of other black female jurors had not been challenged. The court neglected to address the state's race-neutral explanation.
We affirm, notwithstanding the court may have applied the wrong standard in denying the peremptory challenge, since the peremptory challenge would have been improper notwithstanding that other minority jurors were seated. State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988); Bryant v. State, 565 So.2d 1298 (Fla.1990). "It is clear that a pattern of striking black venire members need not be demonstrated before a trial court's duty to conduct an inquiry into the state's reasons for the excusal of the minority member is triggered." Bowden v. State, 588 So.2d 225, 228 (Fla. 1991), cert. denied, 503 U.S. 975, 112 S.Ct. 1596, 118 L.Ed.2d 311 (1992). See also Reynolds v. State, 576 So.2d 1300 (Fla.1991).
The state's expressed facially neutral reason does furnish a valid basis for the challenge, particularly given the strong presumption of non-discriminatory intent. Appellant offered no objection to, or disagreement with, the state's race-neutral reason for the strike, and did not indicate that the court's findings were considered incomplete. Further, Appellant failed to make any objection when the court overruled the objection. In Bowden, the supreme court held that where defense counsel failed to object to the reasons given by the state for dismissal of a minority venire member, the issue of whether an inquiry should have been conducted into the state's reasons for the challenge was waived.
Generally, to prevent a waiver of a juror challenge issue the opponent must call the court's attention to its objection, even if there was an earlier objection, before the jury is sworn. This is done either by renewing its motion or by accepting the jury subject to the earlier objection. Mitchell v. State, 620 So.2d 1008 (Fla.1993); Joiner v. State, 618 So.2d 174 (Fla.1993); Suggs v. State, 620 So.2d 1231 (Fla.1993). The purpose of renewing the objection is to put the court on notice that such an objection remains outstanding. Although defense counsel may have been excused from renewing his objection in this case because the court did indicate that it was aware of Appellant's earlier objection, there is no excuse offered for the defense failure to alert the court that the judge had not made an express finding that the state's explanation was race-neutral, nor was the court placed on notice that the defense was contesting the factual basis for the asserted race-neutral reason. See Floyd v. State, 569 So.2d 1225 (Fla.1990), cert. denied, 501 U.S. 1259, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991); State v. Fox, 587 So.2d 464 (Fla.1991); Miller v. State, 636 So.2d 144 (Fla. 1st DCA 1994) (if defense counsel fails to object to the reasons given by the prosecutor for excusing a juror, the issue is waived). Rather, Appellant's contention that the state did not articulate a race-neutral reason for the challenge and the absence of a specific finding on that point is raised for the first time on appeal, and is therefore waived.
As to all other issues raised, we also affirm.
DELL and SHAHOOD, JJ., concur.
NOTES
[1] The court found that the comments all occurred within the first thirty minutes of the interview. The confession was approximately 2-1/2 hours into the interview.