DELL, J.
Travis Moser appeals his conviction and sentence for first degree murder with a firearm and attempted robbery with a firearm while wearing a mask. Appellant contends that the trial court erred in denying his motion to suppress his January 13, 1996 confession by refusing to consider certain evidence concerning its voluntariness. We affirm.
In his January 13 confession, appellant admitted that on December 14, 1995, he and a co-defendant attempted to rob the victim, an assistant store manager for Pub-lix, after the store had closed. The victim was sitting on a bench by an ATM machine when the two drove up and demanded his money. The victim refused and as he jumped up from where he was sitting, appellant’s co-defendant fired a shot. Appellant “freaked” and fired a couple more shots. The victim died as a result of five gun shot wounds. Appellant’s gun was later recovered and identified as the gun that shot the victim three times. The following evidence was presented on appellant’s motion to suppress this confession.
On January 12, 1996, Detective Mayo went to appellant’s home to question him. Detective Mayo informed appellant’s father that appellant was a possible suspect in the murder, he was looking for a shotgun, and he wanted to talk to appellant. Detective Mayo then spoke to appellant and asked that he come to the sheriffs office for questioning. Appellant agreed. He was not under arrest at the time. A detective drove appellant to the sheriffs office where Detective Wolfort conducted an interview from approximately 10:00 p.m. to 12:30 a.m. on January 13, 1996. In the recorded portion of the January 12 interview, appellant denied his involvement in the murder. He also moved to suppress this statement.
*1167 After Detective Wolfort interviewed appellant, Detective Mayo had an unrecorded “general conversation” with appellant. This conversation lasted for approximately forty-five minutes until about 1:30 a.m., when a detective drove appellant home. According to Detective Mayo, he told appellant that he could either confess and present his side of the story to the judge and jury or walk into the courtroom with a “chip on his shoulder.” He also told appellant that it would be better for him if he confessed. Detective Mayo testified that appellant did not confess at this time and that he did not promise appellant anything for his confession.
On January 13, 1996, at approximately 4:30 or 5:00 p.m., Detective Mayo went to appellant’s home to tell him that his co-defendant had been arrested, and that it was only a matter of time before he would be arrested. Since appellant was not home when Detective Mayo arrived, his mother paged him. Appellant returned with a friend and spoke to Detective Mayo. During the conversation, appellant told Detective Mayo he wanted to confess, but that he might want his attorney present. Detective Mayo testified that he told appellant he would take his comment to mean that he was invoking his right to have his attorney present, and therefore, he would not have any further conversation with him. Appellant then went inside the house, leaving Detective Mayo to speak with his mother.
At 6:16 p.m., Detective Mayo received a page from appellant, who claimed he wanted to confess. Appellant then asked Detective Mayo to pick him up, but Detective Mayo explained that if he wanted to confess, he would have to come to the sheriffs office on his own. Appellant told Detective Mayo that after he showered and had dinner with his family, he would come to the sheriffs office to confess.
At 7:30 p.m., appellant gave a recorded statement to Detective Mayo. Detective Mayo began the interview by informing appellant of his Miranda rights. He also informed appellant that he was not under arrest, he was free to leave, and that the police could not make any threats or promises to induce his statement. Appellant acknowledged, both orally and in writing, that he understood these rights and wished to waive them. He also stated that he was there of his own free will and that the best thing for him was to confess and turn himself in to the police. Appellant then gave the detailed account of how he and his co-defendant committed the murder on December 14, 1995. The interview ended at 7:59 p.m. with appellant telling Detective Mayó that he was glad “to get it off [his] chest” because of “[s]tress like you wouldn’t believe.”
During the suppression hearing, the trial court concluded that the January 12 and 13 statements were separate and distinct. The trial court then excluded evidence concerning the events on January 12. The trial court also excluded the January 13 conversations between Detective Mayo and appellant’s mother and subsequent conversations between appellant and his mother. However, the trial court informed appellant that he could proffer their testimony. The trial court also informed appellant that if the state decided not to use the January 12 statement, he could proffer Detective Wolfort’s testimony concerning his conversations with appellant on January 12 and the early morning of January 13. The trial court found that appellant’s confession to Detective Mayo was admissible because it was freely and voluntarily given while appellant was not in custody. Prior to trial, the state notified the court that it did not intend to use the January 12 statement. As a result, appellant withdrew his motion to suppress his January 12 statement. He did not request permission to make any further proffer of Detective Wolfort’s testimony or any other matters that may have occurred on January 12.
Appellant contends that the trial court failed to permit a full and fair hearing on the voluntariness of his confession. *1168 He argues that the trial court erred in refusing to permit him to proffer evidence concerning conversations with Detective Wolfort; to consider evidence concerning his contact with law enforcement on January 12; and to consider other relevant evidence including misrepresentations, deception, and information relayed to his mother, but intended for him.
Initially, the record shows that appellant made a proffer of the conversations that transpired on January 13 between Detective Mayo, appellant’s mother, and appellant. However, the record also shows that after the state announced it would not use the January 12 statement, appellant did not proffer the events and conversations with Detective Wolfort of January 12. Since the trial court did not refuse appellant the right to make a proffer of that evidence, this issue has not been preserved for appellate review. See Nixon v. State, 694 So.2d 157, 157 (Fla. 4th DCA 1997); § 90.104(l)(b), Fla. Stat. (1999). However, for the reasons stated below, the error, if any, in the trial court’s refusal to consider the proffered evidence and to consider evidence of Detective Wolfort’s conversations with appellant, was harmless beyond a reasonable doubt. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986); Rozier v. State, 636 So.2d 1386 (Fla. 4th DCA 1994)(“The error in failing to permit a proffer can be harmless.”).
Next, we agree with the state’s argument that any “taint” from appellant’s earlier statement to the police was attenuated by the intervening circumstances leading to his confession. Appellant gave the January 13 statement eighteen hours after his first statement to the police and two and a half to three hours after Detective Mayo spoke to him at his home. Additionally, after waiving his Miranda rights orally and in writing, appellant confessed to Detective Mayo, without Detective Wolfort being present. See Lyons v. Oklahoma, 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481 (1944); see also Nelson v. State, 688 So.2d 971, 972-74 (Fla. 4th DCA 1997).
The state also correctly argues that the statements actually proffered by appellant were insufficient to render his confession involuntary.[1] See id. at 974 (“[Statements suggesting leniency if [a] confession is made are only objectionable if they establish an express quid pro quo bargaining for the confession.”); Oregon v. Elstad, 470 U.S. 298, 317, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985)(citing Frazier v. Cupp, 394 U.S. 731, 739, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969))(“[T]he court has refused to find that a defendant who confesses, after being falsely told that his codefendant has turned State’s evidence, does so involuntarily.”); see also Bowen v. State, 565 So.2d 384, 387 (Fla. 5th DCA 1990)(noting that “misrepresentations of fact by an interrogator relevant to the crime under investigation does not require a suppression of [a] confession”).
*1169 Finally, we hold that the trial court did not err when it concluded that the January 13 confession was freely and voluntarily given. Appellant voluntarily went to the sheriffs office without police assistance or encouragement. His actions and statements prior to and during the interview show that he was there of his own free will without any police coercion. Before giving his confession, he received and acknowledged that he understood his Miranda rights and waived them orally and in writing. Furthermore, appellant testified at trial that he wanted to do the “right thing” by confessing and acknowledged that the police did not threaten, coerce, or promise him anything to obtain his confession.
Accordingly, we affirm appellant’s conviction and sentences for first degree murder with a firearm and attempted robbery with a firearm while wearing a mask.
AFFIRMED.
WARNER, C.J., and GUNTHER, J., concur.

. Defense counsel proffered the following:
"Detective Mayo had made statements to Travis Moser indicating that [his co-defendant] had implicated him, ... in the crime, that he told Travis Moser that [his co-defendant] had indicated that Travis was one of the participants in the crime, when in fact that was not true ... [and] that he implied that [his co-defendant] either had or would strike some sort of agreement with the police or the State Attorney’s office and turn in Travis Mos-er, ... in fact there was no evidence of that.
In regards to the statements made by Detective Mayo to [appellant’s mother] when Travis Moser was not present, ... [he told her] that if Travis Moser turned himself in and confessed to the homicide and attempted robbery, that things would go easier on him, things would be better for him, that the results of the problem he was in would be better, and that [he] would be able to help Travis Moser.
I would further expect that [appellant’s mother] would testify that she related [sic] those statements by Detective Mayo to her son, Travis Moser, prior to his contacting Detective Mayo in the evening hours of January 13th, 1996 and agreeing to turn himself in and make a statement [and] ... that she was convinced that — from Detective Mayo statements [ — ] that'Detective Mayo was there to help Travis, and that because of that it would be best for Travis to turn himself in and make a statement to Detective Mayo.”