793 So.2d 1044 (2001)
Velton L. EDWARDS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D00-1137.
District Court of Appeal of Florida, Fourth District.
July 25, 2001.
Rehearing Denied October 1, 2001.
*1046 Carey Haughwout, Public Defender, and Paul E. Petillo, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and August A. Bonavita, Assistant Attorney General, West Palm Beach, for appellee.
STONE, J.
Edwards was charged with arson but convicted of the lesser-included offense of criminal mischief. He argues that the court reversibly erred in denying a motion to suppress his confession. We agree, in part, and reverse.
Edwards challenges the interrogation that led to his confession on three grounds. He claims that the fire marshal investigator and police detective who questioned him (1) appealed to Edwards' religious beliefs by reminding him of the biblical phrase, "the truth will set you free;"[1] (2) deceived him by promising to tell the judge that Edwards was cooperative in telling them the whole truth; and (3) coerced his confession by telling Edwards that if he did not tell the truth, they would "hit" him with "every" possible charge. The tape of Edwards' recorded statement reflects that these things occurred. The trial court had discretion to conclude that the first and second allegations did not cause Edwards to make incriminating statements; however, we cannot conclude that the coercion, which the state acknowledges was improper, was harmless.
The facts essentially are undisputed. Edwards had been living with his girlfriend, Emily Samuel. Following an argument, Samuel called the police, and Edwards was directed to get his things and leave the apartment. Edwards gathered his clothes and left. Later that day, a neighbor heard a window break directly below his apartment and saw Edwards climb out through the window. The neighbor approached Edwards, whose hand was bleeding, and asked why Edwards destroyed the window. Edwards told the neighbor that this was between him and his "old lady," and if the neighbor said anything, he and his brother would get him. Edwards left, and the neighbor saw fire coming from the window that Edwards had exited.
Upon entering the apartment, the fire investigators found the apartment in disarray, with piles of clothing spread everywhere. They concluded that the fire was a result of arson.
An investigator with the state fire marshal's office discovered fire patterns coming *1047 from the bedroom window that Edwards had exited and determined that the fire originated on the corner of the bed located in the bedroom. He said the fire had been started by some type of open flame that was applied to the bedding or linen on top of the bed. He stated that it could have been a lighter or match, but cigarette ash alone was not hot enough to ignite bed linens.
Investigators also found blood on the wall next to the broken window and in a bucket below the window. A criminalist at the crime laboratory later determined that the blood taken from the scene had only a one in 578 chance of belonging to someone other than Edwards. Edwards' girlfriend also testified that Edwards called her on that day and asked if she knew that her apartment was on fire.
We note that at the motion to suppress hearing, the tape of the interrogation was not played, and the defense did not assert that Edwards was coerced. The defense argued only that the religious reference induced Edwards' confession. It failed to raise the additional grounds when it renewed the motion at trial.
In the course of his statement, Edwards initially denied involvement. He then admitted, prior to any objectionable comments by the investigator, that he was angry, broke the window, and entered the apartment. As the questioning progressed, he denied knowledge of how the fire could have started. He suggested that it must have started in the kitchen until he was told that investigators knew it had started in the bedroom. Edwards then stated that he was smoking a cigarette and dropped it on the bedroom floor. Upon further challenge, he admitted:
Okay, I had some matches, right, cause Iyou know, I lit my cigarette and, you know, understand but I ain't have time to look back if the match was out, you know, but I climb through, as I was climbing back through I had the cigarette in my mouth, too, and then Ithe match could have stayed
At this point, the fire marshal investigator indicated that he did not believe that Edwards was telling the whole truth and threatened to "hit" him with every charge he could hit him with if he was not truthful. Edwards then admitted lighting the fire on the bed to get back at his girlfriend.
For a confession to be admissible, it must be made voluntarily. Brewer v. State, 386 So.2d 232, 235 (Fla.1980). It may not be obtained by threats, promises, or the exertion of any improper influence. Id. "The constitution does not bar the use... of any statements that could be construed as a threat or promise, but only those which constitute outrageous behavior and which in fact induce a confession." Nelson v. State, 688 So.2d 971, 974 (Fla. 4th DCA 1997). Thus, there must be a causal nexus between the improper conduct or questioning and the confession. Id. A confession is not involuntary if officers merely inform a suspect of realistic penalties and encourage or request that person to tell the truth. Id. This is equally true if officers tell the suspect that things would be easier on that person if he or she told the truth. Id. at 973; Frazier v. State, 107 So.2d 16, 22 (Fla.1958).
An officer's promise to inform prosecutors or the trial court of a suspect's cooperation does not make a confession involuntary. Maqueira v. State, 588 So.2d 221, 223 (Fla.1991); see also Nelson, 688 So.2d at 973. On the other hand, promises not to prosecute may render a confession invalid. See Interest of K.H., 418 So.2d 1080 (Fla. 4th DCA 1982)(finding confession involuntary where officer promised juvenile he would not be charged, promise was withdrawn, and juvenile, who was *1048 "none too bright," assumed confession would revive initial promise).
Overall, the trial court determines voluntariness from the totality of the circumstances. Voorhees v. State, 699 So.2d 602 (Fla.1997). In addition, the trial court's finding is clothed with a presumption of correctness and should not be disturbed absent abuse of discretion. Nelson, 688 So.2d at 973-74.
Here, the "truth shall set you free" statement, although questionable, amounts to nothing more than encouragement to tell the truth. Surely, Edwards did not think the truth would literally set him free. The investigators simply were appealing to Edwards' religious background in encouraging him not to lie. In any event, the necessary nexus between the offending comment and Edwards' later incriminating statements is not present. Edwards maintained his innocence after the statement was made. He subsequently changed his story only after being confronted with the facts uncovered by the investigation. It was then that he admitted to lighting a match and not knowing whether the flame extinguished before he climbed out the window.
It was, however, error to admit that portion of his statement made subsequent to the threat to hit Edwards with added and more serious charges.[2] Certainly, a threat to charge a suspect with more, and more serious, crimes unless he or she confesses is coercive. Further, it is essentially a promise not to prosecute to the fullest extent allowed by law if that person confesses. Hence, the investigators' threats amounted to an exertion of improper and undue influence, rendering the affected portion of Edwards' statement involuntary. Brown v. State, 413 So.2d 414 (Fla. 5th DCA 1982).
It is also clear that Edwards did not confess to intentionally starting the fire until the threat was made, and he confessed immediately thereafter. Accordingly, Edwards' confession with respect to willfully starting the fire was involuntary and should have been suppressed.
Although we acknowledge that there was substantial evidence of guilt from which a reasonable jury would likely find willfulness, we cannot, applying the mandated standards of State v. DiGuilio, 491 So.2d 1129 (Fla.1986), and Goodwin v. State, 751 So.2d 537 (Fla.1999), find harmless error. It is undisputed that willfulness is an element of criminal mischief, and the jury was so charged. We cannot say beyond a reasonable doubt that the inadmissible portion of Edwards' statement did not contribute to his conviction. Had that portion of Edwards' taped statement been stricken, we cannot exclude the possibility that the jury may not have concluded that Edwards damaged Samuel's property willfully and maliciously. See Goodwin.
We, therefore, reverse and remand for a new trial at which the offending portion of Edwards' statementthe portion made after *1049 the threat of bringing additional and more serious chargesshall be excised.
GUNTHER and SHAHOOD, JJ., concur.
NOTES
[1] John 8:32.
[2] We note that Edwards may have failed to preserve these remaining allegations. In claiming to the trial court that his statement was involuntary, Edwards emphasized only the "truth shall set you free" language as the basis for his challenge. However, the state has not claimed or raised a waiver or preservation issue in this appeal, presumably because the broader issue before the trial court was voluntariness. Therefore, although fundamental error is generally not available to cure unpreserved evidentiary error (admission of statement at trial), we decline to sua sponte impose a preservation issue here. See Latalian v. State, 786 So.2d 1242 (Fla. 4th DCA 2001); State v. Osvath, 661 So.2d 1252 (Fla. 3d DCA 1995).