898 So.2d 233 (2005)
Michael SAMUEL, Appellant,
v.
STATE of Florida, Appellee.
No. 4D03-3415.
District Court of Appeal of Florida, Fourth District.
March 16, 2005.
*234 Carey Haughwout, Public Defender, and Richard B. Greene, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Monique E. L'Italien, Assistant Attorney General, West Palm Beach, for appellee.
HAZOURI, J.
Michael Samuel was charged with attempted robbery with a firearm. He filed a motion to suppress his confession which the trial court denied after an evidentiary hearing. Samuel thereafter entered a plea of guilty to a lesser charge of attempted robbery with a weapon. He was sentenced to ten years in prison and, as part of the plea agreement, he reserved the right to appeal the denial of his motion to suppress. Samuel pled guilty to several other cases at the same plea colloquy; however, he reserved the right to appeal only the motion to suppress in the instant case. We reverse.
Samuel's motion to suppress his confession was predicated on a lack of voluntariness. The state called two witnesses at the motion to suppress hearing: Officers Michael Fowler and Robert Anton. Fowler testified that he was investigating a series of robberies for the Hallandale Beach Police Department. Upon apprehending Samuel, Fowler advised Samuel of his Miranda[1] rights and then told him he was "going to potentially charge him with up to 15 robberies."
*235 The following exchange took place between the prosecutor and Fowler at the suppression hearing:
Q: What was one of the first things you said to him after you read him Miranda?
A: I asked him if he knew why we were there, and he indicated that he didn't know.
Q: Okay.
A: And I told him that I was there, and I was going to potentially charge him with up to 15 robberies.
Q: Okay. And why did you tell him that?
A: It was a ploy to get him to believe that the situation was more serious than it actually was. So that he would believe that he was facing a lot  a more intense situation than what it actually was.
Q: Okay. Is that a tactic you have used in your experience with Hallandale Beach police department?
A: Yes.
Q: Okay. And how many in fact robberies did you know had happened in the timeframe that you were were [sic] investigating the robberies, specifically, that he was charged with?
A: At the time, he was suspected in probably six or seven, in Hallandale, and one or two in Hollywood, and one in the city of Davie.
Q: Okay. So probably nine total?
A: Somewhere in that area.
Q: Okay. And you specifically had him pinpointed on two, is that correct?
A: No, I personally in the city of Hallandale, at that point in time, only had him, had probable cause to arrest him in only actually one.
Q: Okay.
A: And Hollywood had probable cause to arrest him in one.
The record reflects that at that point, in the direct examination of Fowler that he said that Samuel stated that he did not commit 15 robberies. Fowler then asked how many robberies Samuel committed, to which Samuel responded that he "probably" committed five or six. Fowler told Samuel that if he discussed the five or six robberies, he would not charge him with the others.
On cross-examination, the following colloquy took place between Fowler and defense counsel:
Q: Okay. Now, you only knew about two that you were prepared to charge him with? A: Yes.
Q: And you didn't know about three, four or five or six or anything between two and 15, correct?
A: Correct.
Q: So, explain again why you said that.
A: It was a ploy, okay.
Q: Okay.
A: To make him believe that if I was actually prepared to charge him with 15 robberies, and he wanted to talk to me about the five or six he did commit, which was two or three more [sic] I was already aware of, that I would not charge him with the balance of the 15 robberies that I was telling him didn't exist, or that didn't exist.
It was a ploy, so if he believes, okay, if I tell him about the five or six I am going to talk to him about, he won't charge me with the balance of the 15, okay.
Q: Okay. Very good.
I got no problem with that. Okay.
In fact, your statement to him was, and correct me if I'm wrong, is that we are going to go down, and we are going to talk about how many you did. And if *236 you want to cooperate with us, and tell me how many you did, then we will charge you with the ones you are going to tell us about, and we can work with you.
A: Exactly.
Q: That's what you said?
A: Yes. I would charge him with the ones he told me about.
Q: Okay. And that was all said to him at the house.
A: Yes.
Samuel testified he would not have made a statement without these promises.
Samuel argues that the trial court ignored Fowler's testimony that he had used a ploy to get Samuel to admit his offenses. Fowler made a promise not to charge him with certain offenses if he confessed to others and therefore, Samuel asserts, this makes his statement involuntary. The state responds that the complained of actions by Fowler did not take place until after Samuel confessed. The trial court concluded that based on the totality of the circumstances, Samuel voluntarily waived his rights and was not coerced. The trial court's order does not address Samuel's argument made in his motion that Fowler made a promise not to prosecute Samuel for the fifteen charges if he confessed.
"[A] suppression ruling comes to the reviewing court clad in a presumption of correctness as to all fact-based issues...." State v. Glatzmayer, 789 So.2d 297, 301 (Fla.2001). Even though the trial court did not address the so-called ploy, the unrebutted testimony is that Fowler told Samuel "in reference to the 15 robberies, if he discussed with me the other 5 or six that he committed, I wouldn't charge him with the other robberies, meaning the other robberies that didn't exist of the 15." Without any findings by the trial court on this point, this court's review of the order is de novo. McCauley v. State, 842 So.2d 897, 899 (Fla. 2d DCA 2003).
This court, in Edwards v. State, 793 So.2d 1044 (Fla. 4th DCA 2001), stated the following legal principles:
For a confession to be admissible, it must be made voluntarily. It may not be obtained by threats, promises, or the exertion of any improper influence. "The constitution does not bar the use ... of any statements that could be construed as a threat or promise, but only those which constitute outrageous behavior and which in fact induce a confession." Thus, there must be a causal nexus between the improper conduct or questioning and the confession. A confession is not involuntary if officers merely inform a suspect of realistic penalties and encourage or request that person to tell the truth. This is equally true if officers tell the suspect that things would be easier on that person if he or she told the truth.
An officer's promise to inform prosecutors or the trial court of a suspect's cooperation does not make a confession involuntary. On the other hand, promises not to prosecute may render a confession invalid.
Id. at 1047 (citations omitted).
In Edwards, the defendant was making a statement in which he first denied involvement in an arson, then admitted he broke a window and went in the apartment, then denied knowledge of how the fire started, and then admitted dropping a cigarette on the floor. Finally, when challenged, he said he dropped a match not knowing if it was still lit. "At this point, the fire marshal investigator indicated that he did not believe that Edwards was telling the whole truth and threatened to `hit' him with every charge he could hit him with if he was not truthful. Edwards then *237 admitted lighting the fire on the bed to get back at his girlfriend." Id. This court found it was error to admit the portion of the statement made after the threat to add charges was made and held:
Certainly, a threat to charge a suspect with more, and more serious, crimes unless he or she confesses is coercive. Further, it is essentially a promise not to prosecute to the fullest extent allowed by law if that person confesses. Hence, the investigators' threats amounted to an exertion of improper and undue influence, rendering the affected portion of Edwards' statement involuntary.
Id. at 1048.
Although Samuel admitted before the promise that he committed five or six crimes, it was not until Fowler's promise not to prosecute the other fictional crimes that Fowler learned the specifics of the robberies. This was coercive, and makes anything said about the crime charged in the instant case involuntary. We, therefore, reverse the trial court's denial of the motion to suppress the statements as they relate to the crime charged in the instant case, and remand with directions that Samuel may withdraw his plea of guilty and the case may proceed further without use of the statements in question.
REVERSED AND REMANDED.
WARNER and POLEN, JJ., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).