DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JASON A. VERA,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2023-1311

[September 25, 2024]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Andrew L. Siegel, Judge; L.T. Case No. 21-005939CF10A.

Carey Haughwout, Public Defender, and Mara C. Herbert, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Anesha Worthy, Senior Assistant Attorney General, West Palm Beach, for appellee.

WARNER, J.

Appellant, Jason A. Vera, appeals his convictions and sentences for burglary, grand theft of a motor vehicle, and criminal mischief, entered on a plea of no contest after the trial court denied his motion to suppress his confession. He contends that the trial court erred by denying his motion to suppress because the police detectives obtained his confession by coercion. We agree and reverse, concluding that under the totality of the circumstances, the confession should have been suppressed.

**Background**

The State charged appellant by information with burglary of a structure, grand theft of a motor vehicle, and misdemeanor criminal mischief. All three charges stem from the theft of a pickup truck from a business. Detectives obtained surveillance video from surrounding businesses which showed a truck registered to appellant parked in the area at the time of the crime, although appellant was not seen in the videos.

After obtaining the surveillance videos, two detectives went to an automobile garage where appellant's truck was parked outside and asked the garage workers whose silver truck was out front. Appellant answered that the truck was his. The detectives asked to talk to appellant somewhere private and they went into a private room. The detectives did not tell appellant he was free to leave, and they admitted they did not have probable cause to arrest appellant for any crime at that time.

Before questioning appellant, one detective read him his *Miranda* rights. Appellant said he was a professional boxer and lived in a house with other boxers. He told the detectives that he allowed the other boxers to use his truck to go to the convenience store, but he said he had not let anyone borrow his truck the previous night. He told the detectives that the previous night he had driven his truck to the garage for dinner, and then went home and slept. The detective challenged appellant on that timeline, and appellant admitted that he had worked at the garage until midnight. When asked if he had dropped anyone else off at a nearby business, appellant said no. At that point, the following exchange occurred:

DETECTIVE: Okay. So, you know that this entire block has video? Everywhere.

THE DEFENDANT: Correct.

DETECTIVE: Everywhere, right?

THE DEFENDANT: Yeah.

. . .

DETECTIVE: . . . So, there's video –

THE DEFENDANT: Okay.

DETECTIVE: Of you in your truck at a neighboring business, that you don't belong at.

THE DEFENDANT: Okay.

DETECTIVE: So, either you cooperate with us, or we take your truck. Permanently. So, confiscation because it was used in the commission of the crime. So, before you answer,

okay?

The detectives both continued telling appellant that they had surveillance cameras on the block which showed him coming back and driving around the area at 4:00 a.m., which appellant still denied.

Appellant then told the detectives that he had lent his truck out the previous night and had just gotten it back. The detective then questioned appellant about changing his story:

> DETECTIVE: Listen to me. The whole time that we've been here you said that you had your truck, and you were the only one that had it.
>
> THE DEFENDANT: Yeah, but I'm -- I -- I just was not trying get -- not lie to you.
>
> DETECTIVE: Listen to me. I just told you that I have enough to take your truck. So, I'm sure that as an amateur boxer –
>
> THE DEFENDANT: Professional.
>
> DETECTIVE: Whatever. Lived with your grandma. Right? I'm sure that that vehicle that transports you, you hold dear to yourself, right? So, if I take it, because it was used in a commission of a crime, where you going to be when it comes to your vehicle? Because you're not going to get it back.
>
> THE DEFENDANT: I always walk like –
>
> DETECTIVE: Tray [sic]. You got money to buy another one?
>
> THE DEFENDANT: No, ma'am.
>
> DETECTIVE: Okay. So, we're going to start over from the beginning.

Appellant told the detectives that he lent his truck to a friend named Rodriguez. The detective asked appellant if he lent Rodriguez the truck or if appellant drove the truck and dropped Rodriguez off at the burglarized business. She reminded appellant of the cameras. Appellant said he drove his truck and dropped Rodriguez off at the business, and Rodriguez was going to pay him $750. Appellant stayed in his truck as a lookout, while Rodriguez jumped the fence and stole another truck. Rodriguez drove the

3

stolen truck through the fence, and they dropped the truck off at a house or a shop. Appellant provided the address where they dropped off the truck.

One detective handcuffed appellant. The other detective again threatened to seize Appellant's truck:

DETECTIVE: Well, I don't want to have to take your truck.

THE DEFENDANT: Yes ma'am.

DETECTIVE: Which I can because it's been used in the commission of a crime. I don't want to do anything to your truck. I'm not trying to ruin your life, but you just stole somebody belongs [sic].

The detectives accused appellant of providing a fake name for his accomplice, but appellant insisted that Rodriguez was the other person involved in the burglary.

Prior to questioning, the detectives did not have probable cause to arrest appellant, but they did regard his truck as a "suspect vehicle" as it appeared on surveillance video outside the business from which the stolen truck was taken. The detectives did not have video showing appellant in his truck or in the area, so they were not truthful when they told appellant that they knew his whereabouts from the video. Appellant began to cooperate and answer the detectives' questions only after the detectives threatened to confiscate his truck. Without appellant's confession, the State would not have had evidence that appellant was involved in the burglary, grand theft, or criminal mischief.

The trial court found that appellant was in custody during the entire questioning and he waived his *Miranda* rights after adequate warning. The court decided that the detective's threat to take appellant's truck was a deceptive tactic to obtain a confession, but the threat was a true legal statement as the truck was sufficiently linked to the burglary. The court concluded the threat did not render the confession involuntary and denied the motion to suppress.

After his motion to suppress was denied, appellant pled no contest to all three counts, expressly reserving the right to appeal the denial of his motion to suppress. The trial court withheld adjudication on each count and imposed concurrent sentences of two years of probation on Counts I and II, and one year probation on Count III. This appeal follows.

4

## Analysis

Appellant contends that based upon the totality of the circumstances, including the misrepresentation of the evidence and threats, his confession was not voluntary. We agree.

Appellate courts review rulings on motions to suppress with a mixed standard of review, reviewing the legal conclusions de novo while reviewing factual findings for competent, substantial evidence. *See Seibert v. State*, 923 So. 2d 460, 468 (Fla. 2006).

"In order for a confession or an incriminating statement of a defendant to be admissible in evidence, it must be shown that the confession or statement was voluntarily made." *Brewer v. State*, 386 So. 2d 232, 235 (Fla. 1980). In *Martin v. State*, 107 So. 3d 281 (Fla. 2012), our supreme court set forth the test to determine whether a confession was voluntary:

> The test to determine whether a confession is voluntary—in other words, not coerced—is whether it was the product of free will and rational choice. *See Blake v. State*, 972 So. 2d 839, 844 (Fla. 2007) (noting that "the salient consideration" is whether the defendant's free will was overcome). This is determined based on "an examination of the totality of the circumstances surrounding the confession." [*Traylor v. State*, 596 So. 2d 957, 964 (Fla. 1992)]; *see also Blake*, 972 So. 2d at 844; *Brewer*, 386 So. 2d at 237. In assessing the totality of the circumstances, a court must consider any promises or misrepresentations made by the interrogating officers. *See Frazier v. Cupp*, 394 U.S. 731, 739, 89 S. Ct. 1420, 22 L. Ed. 2d 684 (1969) (noting that misrepresentation by law enforcement is a relevant consideration in the totality-of-the-circumstances assessment).

*Id.* at 298.

The detectives threatened appellant with the loss of his truck if he did not confess. "'A confession or inculpatory statement is not freely and voluntarily given if it has been elicited by direct or implied promises, however slight.'" *Day v. State*, 29 So. 3d 1178, 1181 (Fla. 4th DCA 2010) (quoting *Telfort v. State*, 978 So. 2d 225, 227–28 (Fla. 4th DCA 2008)). The detective threatened confiscation of his truck not just once, but three times. She pointed out that this would be a permanent confiscation and that he could not afford to buy a new truck.

5

The State argues that under Florida law, police may seize property used in the commission of a crime. Therefore, the detective's threats were not coercion because the detective had accurately stated the law. *See Green v. State*, 878 So. 2d 382, 383 (Fla. 1st DCA 2003) ("[E]ngaging in a discussion with the defendant about the realistic penalties that may be imposed after cooperation or non-cooperation is not coercive."); *Bussey v. State*, 184 So. 3d 1138, 1141 (Fla. 2d DCA 2015) (second alteration in original) (quoting *Martin*, 107 So. 3d at 305) ("[G]enerally, '[t]o advise a suspect of potential penalties and consequences does not amount to a threat,' and 'encouraging a suspect to cooperate with law enforcement is not coercive conduct.'").

A confession can be inadmissible when officers expressly or implicitly condition leniency or harsher punishment on whether the defendant gave a confession. *See Martinez v. State*, 545 So. 2d 466, 467 (Fla. 4th DCA 1989) (holding that confession was not voluntary when the police elicited confession by telling defendant that he "could wind up" in the electric chair if he was not truthful); *Brewer*, 386 So. 2d at 235–36 (holding that confession was inadmissible because it was coerced after police "raised the spect[er] of the electric chair, suggested that they had the power to effect leniency, and suggested to the appellant that he would not be given a fair trial").

In *Martinez* and *Brewer*, while it was true that the death penalty would have been possible if the defendants were convicted, the confessions were inadmissible because the officers not only told the defendants that they could face the death penalty but suggested that whether this punishment occurred depended on whether they confessed at that moment. Likewise, in this case, the detectives told appellant that they could seize his truck, but suggested that whether they did so depended on whether he confessed. The detective conveyed an express quid pro quo, as she told appellant that either he confessed, or his truck would be seized.

The entire interrogation lasted about thirty minutes. Appellant began confessing about three or four minutes after the detectives first threatened to seize his truck, and almost immediately after a detective said, "I'm sure that that vehicle that transports you, you hold dear to yourself, right? So, if I take it, because it was used in a commission of a crime, where you going to be when it comes to your vehicle? Because you're not going to get it back."

While the trial court found that the officers were truthful in stating that his truck could be seized, this ignores the fact that at the time they had

6

no evidence of appellant's involvement and only stated that appellant's truck was a "possible suspect vehicle" in the theft. Without more, the officers would have been misrepresenting their authority to take his truck.

The immediacy of appellant's confession after the threat to take his truck distinguishes this case from *Nelson v. State*, 688 So. 2d 971 (Fla. 4th DCA 1997), cited by the State. In *Nelson*, the defendant was accused of first-degree murder, and during his interrogation the officers told him that Florida uses the death penalty and that his cooperation "could help," although they "wouldn't guarantee it." *Id.* at 972. On appeal, we affirmed, finding that the trial court did not abuse its discretion because the officers did not expressly offer the defendant leniency or any benefit in exchange for a confession. *Id.* at 973. We also highlighted that the objectionable comments by the officers occurred over two hours before the confession, with the defendant continuing to deny involvement in the meantime. *Id.* at 973–74. In contrast, here, appellant quickly confessed after the officers threatened to take his truck if he did not confess.

Considering the totality of the circumstances, the trial court erred in denying the motion to suppress. As the confession was the sole evidence tying appellant to the crime, his conviction and sentence should now be vacated.

*Reversed and remanded to vacate conviction and sentence, including civil judgments for court costs and restitution.*[1]

*Reversed and remanded.*

CIKLIN and LEVINE, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**

---

[1] Because we are reversing appellant's conviction, his court costs must be reversed as well. *See Rodriguez v. State*, 964 So. 2d 833, 839 (Fla. 2d DCA 2007) ("We also reverse the order imposing costs on Mrs. Rodriguez. A significant portion of the costs were assessed because she was found guilty of felonies. Owing to our reversal of the felony convictions, some of those costs may not apply."). Moreover, we strike the restitution order, as the trial court lacked jurisdiction to enter the order because this appeal was already pending. *See Colson v. State*, 711 So. 2d 604, 605 (Fla. 2d DCA 1998) ("A trial court does not have jurisdiction to enter an order of restitution after a notice of appeal has been filed even though the trial court previously reserved jurisdiction for the restitution.").